UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>JASSIEL J. ARAGON PLIEGO,<br>Defendant. | Case No. 1:25-mj-00127-SAB-1<br><br>ORDER DENYING MOTION FOR IMMEDIATE RELEASE<br><br>(ECF 28) |

Defendant appeared before the court on November 19, 2026, after being arrested for failure to surrender. Shortly before appearing, Defendant moved for his immediate release from custody. (ECF No. 28.) For the reasons stated on the record and set forth below, Defendant's motion is DENIED.

## I. BACKGROUND

Defendant was charged with four misdemeanor counts on November 5, 2025. (ECF No. 1.) On November 20, 2025, when Defendant made his first appearance for the misdemeanor charges, Immigration and Customs Enforcement (ICE) served him with a notice to appear in immigration court and detained him. *Pliego v. Warden*, Case No. 26-cv-1382-DJC-EFB, ECF Nos. 10 (Ex. 1, 3), 13 (E.D. Cal.).[1] Because Defendant was detained at Golden State Annex, an

[1] The court takes judicial notice of the orders and filings in *United States v. Aragon Pliego*, No. 1:25-cv-01382-DJC-EFB, (E.D. Cal.), pursuant to Federal Rule of Evidence 201.

immigration detention facility, the court issued a writ of habeas corpus ad prosequendum and an order directing Defendant's custodian, "as well as any federal agent for this district," to produce Defendant for all any proceedings in this matter and, thereafter, to return Defendant to the detention facility (*See, e.g.,* ECF No. 17.)

Defendant pleaded guilty to one misdemeanor count of operating a motor vehicle under the influence of alcohol on March 19, 2026. (ECF No. 19). The court sentenced Defendant to ten (10) days of incarceration with credit for time served, imposed a $10 (ten dollar) fine, and remanded Defendant to the custody of the United States Marshal. (ECF No. 20.) Following the sentencing hearing, Defendant was returned to the immigration detention facility. (ECF No. 28 at 2.)

Defendant subsequently petitioned for a writ of habeas corpus. Findings and Recommendation at 2, Case No. 1:26-cv-01382-DJC-EFB (E.D. Cal. Apr. 13, 2026), ECF No. 13. The court granted the writ and ordered a bond hearing before an Immigration Judge within 14 (fourteen) days. Order at 2, Case No. 1:26-cv-01382-DJC-EFB (E.D. Cal. May 5, 2026), ECF 17 at 2. Following the immigration bond hearing, Defendant was released from immigration detention in May 2026. (ECF No. 28 at 2.) When Defendant was released from immigration custody, he was *not* immediately taken into custody by the U.S. Marshal to serve the sentence imposed by this court.

II. <u>DISCUSSION</u>

Defendant argues that the U.S. Marshal "apparently" did not place a detainer on him following the sentencing hearing. (ECF No. 28 at 3.) Thus, Defendant reasons, he was erroneously at liberty for more than ten days following his release from immigration detention through no fault of his own. (*Id.*) Invoking the doctrine of credit for time at liberty, Defendant argues that the court must credit him for time he was at liberty following his release from immigration detention. He further argues that the creditable time exceeds his sentence on the misdemeanor charge and requests immediate release from custody. (ECF No. 28 at 2-3 (*citing Clark v. Floyd*, 80 F.3d 371, 374-75 (9th Cir. 1996), and *Green v. Christiansen*, 732 F.2d 1397 (9th Cir. 1996).)

"Under the doctrine of credit for time at liberty, a convicted person is entitled to credit against his sentence for the time he was erroneously at liberty provided there is a showing of simple or mere negligence on behalf of the government and provided the delay in execution of sentence was through no fault of his own." *United States v. Martinez*, 837 F.2d 861, 865 (9th Cir. 1988). The policy concern undergirding the doctrine lies in the fear that, in the doctrine's absence, a marshal would wield an "arbitrary and capricious power" such that "[a] prisoner sentenced for one year might thus be required to wait forty under the shadow of his unserved sentence before it pleases the marshal to incarcerate him." *Smith v. Swope*, 91 F.2d 260, 262 (9th Cir. 1937), *quoted in Clark*, 80 F.3d at 374.

The application of the doctrine in the cases Defendant invokes, however, does not reach the facts of this case. In *Green*, for example, defendant was federally incarcerated, transferred for state incarceration, and then released from state custody with a remainder on the federal sentence. 732 F.2d at 1399-1400. When the federal government re-incarcerated after a gap, *Green* held that defendant must be given credit for time at liberty: the time between when the state authorities released him and when federal authorities re-detained him. *Id.* at 1400. *Green* justified this holding based on the "governing principle" that prisoners "cannot be required to serve [a sentence] in installments." *Id.* (quoting *White v. Pearlman*, 42 F.2d 788, 789 (10th Cir. 1930)).

Defendant is not being required to serve his ten-day sentence in installments. He was confined in federal immigration detention prior to sentencing. After he was sentenced to ten days incarceration, he did not begin serving his criminal sentence because he was taken back to the immigration facility. When he was released from the immigration facility, he had not yet commenced serving the criminal sentence. Thus, the "governing principle" prohibiting piecemeal fulfillment of a prison term, *Green*, 732 F.2d at 1400, is not at issue here.

*Clark* is similarly distinguishable. There, a defendant was sentenced to a term of incarceration and probation and then released on bond pending appeal. 80 F.3d at 372. Critically, "[t]he court ordered that the probationary term commence at that time" (*i.e.*, at the time of release on bond pending appeal). *Id.* Hence, a portion of that defendant's sentence had commenced. The defendant was then convicted and incarcerated on state charges while on federal probation. *Id.*

When that defendant was released from state custody, he was not promptly incarcerated on his federal charges. *Id.* at 373. Once he was federally incarcerated, *Clark* held that the credit for time at liberty doctrine applied to the gap between defendant's release from state custody and his federal incarceration. *Id.* at 374. Yet, unlike Defendant here, the *Clark* defendant began his federal sentence—albeit the non-custodial portion of his federal sentence—*before* the state custody interruption and the gap between federal and state incarcerations. *Id.* at 372. Not counting this gap would have violated the "governing principle" of the doctrine set forth in *Green*: that prisoners cannot be required to serve their sentences in installments. 732 F.2d at 1400 (quoting *White*, 42 F.2d at 789).

Defendant points to language in *Clark* summarizing another Ninth Circuit case as holding that in applying the doctrine the court need not concern itself "with the fact that the prisoner had not served any part of his federal sentence prior to the time for which he was given credit." 371 F.3d at 374 (citing *Smith v. Swope*, 91 F.2d 260, 261-62 (9th Cir. 1930)). As *Clark* confirms, the doctrine can apply where there has been no prior federal custody. 371 F.3d at 374. But to apply the doctrine where there has been no commencement of the sentence is too far an extrapolation from the "governing principle" of the doctrine and is *not* a question presented in *Clark*. Indeed, in *Clark,* while there had been no period of federal incarceration prior to the time for which defendant was given credit, there was a period during which defendant served an installment of the sentence (i.e., probation). 732 F.3d at 1400. And in *Smith*, the court's order stated that the sentence was to begin "forthwith." 91 F.2d at 262, *quoted in* Clark, 371 F.3d at 374. No such edict is found in Defendant's sentencing order here; nor would there have been given that Defendant had appeared for federal sentencing on a writ from immigration authorities. (ECF Nos. 16, 19.)

In sum, the facts attending Defendant's release from immigration custody and the commencement of his criminal sentence are meaningfully distinguishable from the facts presented in *Green* and *Clark*. The doctrine of credit for time at liberty does not apply to Defendant's situation because the governing principle that animates that doctrine is not at play.

## III. ORDER

For the reasons discussed above, Defendant's motion is DENIED.

IT IS SO ORDERED.

Dated: **November 20, 2026**

UNITED STATES MAGISTRATE JUDGE